\*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

JOSHUA M. PRENSKY,               )        Civil Action No.: 09-6200 (FLW)

      Plaintiff / Appellant,         )        **OPINION**

v.                               )

CLAIR GREIFER LLP,               )

      Defendant / Appellee.          )
_____

**WOLFSON, United States District Judge**:

    Appellant Joshua M. Prensky ("Debtor" or "Prensky") appeals a final Order of the Bankruptcy Court dated November 2, 2009, which granted summary judgment to Clair, Greifer LLP ("CG"), a law firm that represented his ex-wife in their divorce. The Bankruptcy Court found that, pursuant to 11 U.S.C. § 523(a)(15), Debtor's obligation to pay $85,000 in attorney's fees directly to CG is a non-dischargeable divorce-related debt in Debtor's chapter 7 bankruptcy. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). For the reasons that follow, the Court will affirm the decision of the Bankruptcy Court.

**I. BACKGROUND**

    The following facts are derived from the record below and are not disputed. On April 1, 2005, Debtor commenced a divorce action against his wife, Miriam Prensky ("Ms. Prensky") in New York State Supreme Court. Ms. Prensky retained CG to represent her in the matrimonial action. The New York State Supreme Court rendered its Decision and Order ("Divorce

Decision") on November 5, 2007, and a Judgment of Divorce was entered the next month. The Divorce Decision attributed the high costs of the litigation and the long delay between commencement and conclusion of the divorce on Debtor's "actions [that] unnecessarily prolonged this litigation without regard to the financial impact of his conduct." Divorce Dec. at p. 18.  Specifically, the Divorce Decision noted that Debtor had commenced the action in the wrong venue at its inception, necessitating a change of venue. *Id.*  Additionally, the court found that Debtor

> violated the court's *pendent* lite order by failing to pay the rent for the marital residence, thereby necessitating enforcement motions and ultimately a contempt hearing[,] . . . prolonged discovery by withholding relevant documents . . . [and Debtor] and his family members were not forthcoming when called to testify at third party depositions, thereby causing unnecessary expense and delay.

*Id.*

The divorce court, in light of Ms. Prensky's position as "the less monied spouse in [the] action" and in order to "level the playing field in the context of this unnecessarily prolonged litigation," found that

> [Ms. Prensky] is entitled to counsel fees from plaintiff in the amount of $85,000, a sum that is calculated to level the playing field in the context of this unnecessarily prolonged litigation. This sum shall be paid directly to [Ms. Prensky's] counsel in three equal installments, the first of which shall be paid on or before April 1, 2008. The two subsequent payments shall be made on July 1, 2008 and September 1, 2008.

*Id.* at p. 18-19.  The obligation to pay the $85,000 in legal fees ("Law Firm Indebtedness") was separate from, and in addition to, orders to pay child support, maintenance, martial debt, and an additional sum of $185,850.  *Id.* at p. 12-19.  CG ceased to represent Ms. Prensky following the Divorce Decision.  Before Debtor was required to make the first payment to CG, Debtor filed a chapter 7 petition in the Bankruptcy Court on January 10, 2008.  Debtor did not make, and has not made, any payments to CG as required by the Divorce Decision.

2

Thereafter, on April 1, 2008, CG commenced an adversary proceeding seeking an order from the Bankruptcy Court determining that the Law Firm Indebtedness was non-dischargeable under 11 U.S.C. § 523(a)(15). In the adversary complaint, CG asserted that Debtor was mandated by the Divorce Decision to pay the Law firm Indebtedness and that the debt "was incurred by the Debtor as a Court ordered award to Debtor's former wife, which was to be paid directly to [CG] in the course of a divorce in connection with an unambiguous divorce decree." Pl's Ad Compl. at ¶ 14.

The parties appeared before the Bankruptcy Court on August 6, 2009, on cross-motions for summary judgment. CG sought summary judgment in the amount of $85,000, plus interest, attorney's fees, and other charges. In response Debtor sought summary judgment on two grounds: (1) that CG lacked standing to contest the dischargeability of the fees because CG is not a "spouse, former spouse or child of the debtor" as required under 11 U.S.C. § 523(a)(15); and (2) that CG had failed to establish that the attorneys' fees were in the nature of support under 11 U.S.C. § 523(a)(5).

Following argument by the parties, the Bankruptcy Court granted CG's motion in part, finding the Law Firm Indebtedness non-dischargeable but declining to award CG any additional recovery. In adjudicating the Law Firm Indebtedness as non-dischargeable, the Bankruptcy Court implicitly found that CG had standing, noting that the 2005 amendments to 11 U.S.C. §§ 523(a)(5) and (a)(15) were "[c]learly . . . intended to increase the scope and discharge exception . . . and not limit the protection to three distinct classes of creditors – spouses, former spouses and children of the debtor." *Clair, Griefler LLP v. Prensky* (*In re Prensky*), 416 B.R. 406, 410 (Bankr. D.N.J. 2007). The Bankruptcy Court then rejected Debtor's second argument, holding that the Legal Firm Indebtedness "must be considered a claim incurred in the course of a divorce

3

and, as such, is non-dischargeable" because Ms. Prensky "is the intended beneficiary of the obligation and possesses both the rights and remedies at state law to enforce the [Divorce Decision]." *Id.* at 411. Accordingly, the Bankruptcy Court entered an Order determining the Law Firm Indebtedness to be non-dischargeable, and denying Debtor's cross-motion for summary judgment. It is from the November 10, 2009 Order that Debtor now appeals.

## II. STANDARD OF REVIEW

When reviewing a bankruptcy court's decision, the standard of review is determined by the nature of the issues presented on appeal. *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 157 (D.N.J.2005). In particular, factual determinations reviewed on appeal should not be set aside unless found to be "clearly erroneous." *See* Fed. R. Bankr.P. 8013; *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995); *Nantucket Investors II v. California Federal Bank* (*In re Indian Palms Assocs., Ltd.*), 61 F.3d 197, 203 (3d Cir. 1995). Review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 50 U.S. 602, 622 (1993). Conversely, legal conclusions from the bankruptcy court are subject to *de novo* or plenary review by the district court. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997); *Chemetron*, 72 F.3d at 345. Mixed findings of fact and conclusions of law must be broken down, and the applicable standards-"clearly erroneous" or *de novo*-must be appropriately applied to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (*citing In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102-03 (3d Cir. 1981)).

Debtor's argument that the Bankruptcy Court erred when it "implicitly held that the [CG] did have . . . standing" under 11 U.S.C. § 523(a)(15) to appear before the Bankruptcy Court and

4

prevent discharge of the Law Firm Indebtedness is a question of law. This Court will review this legal determination *de novo*. *See Universal Minerals* 669 F.2d at 102-03 (holding that plenary review shall apply to lower court's "choice and interpretation of legal precepts and its application of those precepts to the historical facts"). Debtor's second argument, that the Bankruptcy Court erred when it found that the Law Firm Indebtedness was a support obligation owed to Ms. Prensky pursuant to § 523(a)(5), is a question of fact. This Court will review this factual determination under a clearly erroneous standard. *See* Fed. R. Bankr.P. 8013; *see also Williams v. Williams* (*In re Williams*), 703 F.2d 1055, 1057-58 (8th Cir. 1983); *Sullivan v. Sullivan* (*In re Sullivan*), 423 B.R. 881, 883 (Bankr. E.D. Mo. 2010); *Duffy v. Taback* (*In re Duffy*), 344 B.R. 237, 242 (S.D.N.Y. 2006). This Court will also analyze Debtor's second argument under § 523(a)(15) to determine if the Law Firm Indebtedness was incurred in the course of a divorce decree. This legal determination will be reviewed *de novo*. *See Short v. Short* (*In re Short*), 232 F.3d 1018, 1022 (9th Cir. 2000) (explaining that whether a debt was "incurred in the course of a divorce or separation" is a legal question that must be reviewed *de novo*); *Colvin v. Raffeld* (*In re Raffeld*), No. 05-8084, 2006 WL 3327068, at *1 (B.A.P. 6th Cir. 2006) ("The proper factors to be considered in determining the dischargeability of a marital debt under § 523(a)(15) is a question of law, which the Panel reviews *de novo*").

When deciding whether a particular debt falls within a § 523 exception, courts generally construe the statute strictly against the objecting creditor and liberally in favor of the debtor. *See Ins. Co. of N. Am. v. Cohn* (*In re Cohn*), 54 F.3d 1108, 1113 (3d Cir. 1995)). Consequently, the party claiming an exception to discharge usually bears the burden of proving by a preponderance of the evidence that the debt is not dischargeable. *See, e.g., Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Taylor v. Fechnay* (*In re Fechnay*), 425 B.R. 212, 229 (Bankr. E.D. Pa. 2010). That

policy of protecting and favoring the debtor is tempered, however, when the debt arises from a divorce or separation agreement. *See In re Crosswhite*, 148 F.3d 879, 881-82 (7th Cir. 1998) (explaining that §§ 523(a)(5) and (a)(15) express Congress' determination to protect former spouses in matters of alimony, maintenance, support, and divorce-related debts despite the Bankruptcy Code's general policy of providing a debtor with a fresh start). The §§ 523(a)(5) and (a)(15) exceptions from discharge are thus construed more liberally than other Section 523 exceptions. *Id*.

**III. DISCUSSION**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended 11 U.S.C. §§ 523(a)(5) and (a)(15) of the Bankruptcy Code.[1] Amongst other changes made by the amendments, §§ 523(a)(15)(A) and (B) were eliminated; these sections previously allowed debtors to render dischargeable non-support obligations that were incurred in the course of a divorce or separation if the debtor did not have the ability to pay the debt, or if discharging the debt would have resulted in a benefit to the debtor that outweighed the detrimental consequences to the spouse, former spouse, or child. *See In re Blackburn*, 412 B.R. 710, 712 (Bankr. W.D. Pa. 2009). Consequently, as a debtor's ability to pay is no longer a factor bankruptcy courts consider when analyzing whether a debt is non-dischargeable under § 523(a)(15), courts do not engage in any balancing test of whether a debtor would gain more than his or her domestic relations creditors if the debtor were granted a discharge. *Id*.

---

[1] Absent contrary indication, all "Code," chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 as amended by the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA"), Pub. L. 109-08, 119 Stat. 23.

BAPCPA took effect on October 17, 2005; Debtor's bankruptcy case was filed on January 10, 2008, so this proceeding is governed by the amended statute. As amended, §§ 523(a)(5) and (a)(15) provide that a chapter 7 bankruptcy does not discharge an individual debtor from any debt . . .

    (a)(5) for a domestic support obligation[2]

    . . .

---

[2] "Domestic support obligation" is defined by the Bankruptcy Code to mean

. . . a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is-

(A) owed to or recoverable by-

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of-

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

> (a)(15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a government unit. . .

§§ 523(a)(5) and (a)(15).

In light of the above statutory scheme, the Court will address Debtor's arguments with respect to CG's standing and the classification of the Law Firm Indebtedness as a support obligation.

### (1) Standing

The Bankruptcy Court implicitly found that CG had standing to appear before the court and oppose the discharge of the Law Firm Indebtedness. Debtor argues that CG lacked standing to appear before the Bankruptcy Court and to oppose the discharge of the Law Firm Indebtedness because CG is not the "spouse, former spouse, or child of the debtor," which Debtor claims is required by § 523(a)(15). Debtor also argues that his obligation to pay the Law Firm Indebtedness is not a debt owed to Ms. Prensky because the divorce court ordered Debtor to pay CG directly. In support of his argument that only a spouse, former spouse, or child of Debtor has standing to contest the dischargeability of the Law Firm Indebtedness, Debtor relies on *Hisaw v. Hisaw* (*In re Poppelton*), 382 B.R. 455 (Bankr. D. Idaho 2008) and *Leo, Warren, Rosenfield, Katcher, Hibbs & Windsor, P.C. v. Brooks* (*In re Brooks*), 371 B.R. 761 (Bankr. N.D Tex. 2007).

Both cases are factually and legally distinguishable from the present action. In *Poppelton*, co-personal representatives of a deceased ex-spouse's estate sought a declaration that a portion of a pre-divorce debt that the living ex-spouse was ordered to pay in a divorcee decree was non-dischargeable in the living ex-spouse's chapter 7 bankruptcy. 382 B.R. at 456. The

living ex-spouse argued that the representatives of the estate had no standing to bring the adversary proceeding, and the court agreed. *Id*. at 455-56. In examining relevant law, the *Poppelton* court found only one case that addressed an estate's standing to bring such an action, *Estate of Donald Bryant v. Diane Bryant* (*In re Bryant*), 260 B.R. 839 (Bankr. W.D. Ky. 2001), a pre-BAPCPA case. 382 B.R. at 457.

In *Bryant*, a debtor ex-spouse defaulted on her obligation under a property settlement agreement to pay her ex-husband $17,000 plus interest for his share of the martial estate. 260 B.R. at 842. The ex-husband passed away in the calendar year following the default. *Id*. The debtor filed for chapter 7 bankruptcy relief, and representatives of the ex-husband's probate estate commenced an adversary proceeding seeking a determination that the debt owed to the deceased spouse was non-dischargeable under § 523(a)(15). *Id*. at 841. The *Bryant* court found the debt to be dischargeable, explaining,

> The whole purpose of this provision is to protect a former spouse or child from having to assume marital debts discharged by a Debtor in bankruptcy. Since the former spouse in this case is deceased, the Court has no interest in protecting his estate, as no detriment can occur to the deceased party if the debt is discharged.

*Poppelton*, 382 B.R. at 458 (*quoting Bryant*, 260 B.R. at 849). Following the reasoning of the *Bryant* court, the *Poppelton* court found the debt to be dischargeable, noting "there is no indication in the language of the Code or its legislative history that Congress considered it important that [a debtor's] heirs be protected." *Id.* at 458-59. In finding the debt dischargeable, the *Poppelton* court also referred to the pre-BAPCPA Congressional legislative history of § 523(a)(15):

> The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation

9

>agreement. It is only the obligation owed to the spouse or former spouse-an obligation to hold the spouse or former spouse harmless-which is within the scope of this section.

*Id*. at 457-8.[3]  *Poppelton* and *Bryant* are distinguishable from the case at bar for two reasons; the two bankruptcy courts relied on cases analyzing § 523(a)(15)'s pre-BAPCPA language, and both cases declined to protect the **estate** of a creditor ex-spouse rather than the living ex-spouse.

*In re Brooks* is equally unavailing. In that case, the moving law firm sought a declaration of non-dischargeability against the debtor for legal fees associated with services performed for the debtor's wife in a divorce action. 371 B.R. at 762-63. As CG contends, and this Court agrees, "that is where the similarity to the case at bar ends." Appellee's Br. at p. 13. In *Brooks*, the law firm that represented the debtor's former spouse sued both the debtor and the former spouse for fees incurred during their divorce action. 371 B.R. at 762. The law firm obtained a judgment against both parties, and "[i]n the Final Judgment the Court awarded the Firm $23,923.00, recoverable from the Debtor" while also assessing a separate liability for the spouse. *Id*.. As a result of the final judgment, each party owed a debt to the law firm, and the inability of one ex-spouse to pay the law firm its assigned share of the debt did not impact the other's liability.

Here, if the Bankruptcy Court had granted a discharge to Debtor for the Law Firm Indebtedness, Ms. Prensky would be on the receiving end of collection attempts by CG. Indeed, the Bankruptcy Court noted the distinction between the Debtor's actions and the facts in *Brooks*: "Clearly, under those circumstances [in *Brooks*], the fees were not of the kind owed to a 'spouse, former spouse, or child of the debtor.' This stands in marked contrast to the facts in the case at

---

[3] It is vital to note that the legislative history cited in *Bryant* and relied on in *Poppelton* for the proposition that only a spouse, former spouse, or child of a debtor has standing to bring an action is not replicated in the Congressional legislative history surrounding the enactment of BAPCPA. H.R. Rep. No. 31, 109th Cong., 1st Sess 215 (2005).

bar, where the matrimonial court expressly ruled that counsel fees were being awarded to Ms. Prensky to 'level the playing field.'" *Prensky*, 416 B.R. at 410.

In that regard, Debtor incorrectly asserts that

[T]he *Brooks* [c]ourt also drew support from HR Rep. No. 31, 109th Cong., 1st Sess 215 (2005), [which] likewise stated that the House Report (BAPCPA 2005) fully explains the consequences of the change of Section 523(a)(15) of the Bankruptcy Code. . . . Congress . . . confined the obligations owing by a debtor which are not dischargeable only to those payable to the spouse or child of the debtor and not to third parties, such as a law firm which represented a former spouse."

Appellant's Br. at p. 8.  In fact, the 2005 Congressional Report on BAPCPA was not referenced in *Brooks*, nor is any such language included in the Congressional record cited by Debtor.  The *Brooks* court only referenced Congress's report from when the Bankruptcy Code was amended in 1994.  371 B.R. at 766.  The report is of no relevance in light of the BAPCPA amendments to §§ 523(a)(5) and (a)(15).  More importantly, while the *Brooks* court stated that Congress in 1994 did not intend §§ 523(a)(5) and (a)(15) to be used to "to aid in a law firm's collection effort," the court qualified their remarks by stating, "[t]he typical scenario that Congress intended to prevent is when a [non-debtor] spouse . . . is left out-of-pocket because of a debtor's bankruptcy filing.  Therefore, if a child or non-debtor spouse owes attorneys' fees in connection with domestic support, it may make sense for those fees to be non-dischargeable."  *Id*. at 767.

Having distinguished *Poppelton* and *Brooks*, the Court finds *Gilman v. Golio* (*In re Golio*), 393 B.R. 56 (Bankr. S.D.N.Y. 2008), persuasive.  In *Golio*, the debtor ex-husband's "wilful failure to comply with the Divorce Judgment and other orders of the state court" led the divorce court to order the debtor pay his ex-wife's attorneys' fees.  393 B.R. at 60.  In light of debtor's ex-wife having "already paid out of pocket most of the attorneys' fees and costs[,]" the divorce court ordered payment to be made directly to his ex-wife.  *Id*. at 63.  The debtor argued

11

that the attorneys' fees should have been made directly payable to his ex-wife's counsel pursuant to N.Y. Domestic Relations Law § 237(c), which directs judges to order counsel fees to be paid directly to the attorney representing the petitioner in an action "for failure to obey any lawful order compelling payment of support or maintenance, or [a] distributive award . . ." *Id*. Debtor contended that had the divorce court assigned the debt obligation properly the debt would be dischargeable. *Id*.

The *Golio* court rejected Debtor's argument, characterizing it as "improperly elevat[ing] form over substance" and writing, "[i]t is a 'well-established principle of bankruptcy law that dischargeability must be determined by the substance of the liability rather than its form." *Id*. at 63 (*quoting Pauley v. Spong* (*In re Spong*), 661 F.2d 6, 9 (2d Cir. 1981)). Further, the court reasoned, "to except such attorneys' fees and costs in light of the Defendant's wilful failure to comply with the state court judgments and orders is consistent with the legislative purpose of 11 U.S.C. §§ 523(a)(5) and (a)(15)." *Id*. Accordingly, the court found that the debt was owed "to a former spouse and [was] clearly incurred in connection with the parties' divorce," and as a result was non-dischargeable under § 523(a)(15). *Id*.

The substance of the liability in the case at bar is substantially similar to what was before the court in *Golio*. Here, the divorce court explicated that Debtor's violation of the *pendente lite* order by failing to pay rent for the marital residence, thereby necessitating enforcement motions and ultimately a contempt hearing, was one of several factors that led the court to order attorney's fees to be paid directly to Ms. Prensky's attorneys. The divorce court, pursuant to N.Y. Domestic Relations Law § 237, stated that "[t]he court is authorized, in its discretion, to order counsel fees in a matrimonial action to enable a less monied spouse to carry on the case or

12

defend the action, as justice requires having regard to the circumstances of the case and the respective parties." Divorce Decision at p. 17. Indeed, N.Y. Dom. Rel. Law § 237(a), states:

> In any action or proceeding brought . . . for a divorce . . . the court may direct either spouse . . . to pay such sum or sums of money directly to the attorney of the other spouse to enable that spouse to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties.

N.Y. Dom. Rel. Law § 237(a).

Exercising this statutory authority, the divorce court found that "[Ms. Prensky] is entitled to counsel fees from [Debtor] in the amount of $85,000" because of Debtor's conduct during the divorce proceeding, and ordered that those fees "be paid directly to [Ms. Prensky's] counsel [CG] . . ." Divorce Decision at p. 18. The imposition of attorney's fees on Debtor has not extinguished Ms. Prensky's liability to CG. CG has made it clear that they will pursue Ms. Prensky for payment of the Law Firm Indebtedness if Debtor is granted a discharge. Therefore, liberally construing § 523(a)(15), as this Court must, CG has standing to contest the dischargeability of the Law Firm Indebtedness before the Bankruptcy Court because it stands in the shoes of Ms. Prensky. To find otherwise would deny Ms. Prensky the type of protection that Congress intended to extend to spouses, ex-spouses, and children of a debtor when it enacted and amended § 523(a)(15).

Accordingly, the Bankruptcy Court's decision that CG had standing to contest the dischargeability of the Law Firm Indebtedness was proper.

**(2) Domestic Support Obligation**

The Bankruptcy Court found the Law Firm Indebtedness to be a "divorce-related debt incurred by [Debtor] in the course . . . of the divorce proceedings between [Debtor and Ms. Prensky] and [is] non-dischargeable pursuant to 11 U.S.C. § 523(a)(15)." *Prensky*, 416 B.R. at

13

410-11. On appeal, Debtor does not argue against the Bankruptcy Court's finding that the Law Firm Indebtedness is a divorce-related debt under § 523(a)(15). Instead, Debtor argues that "[n]othing contained in the Divorce Decision . . . supports the finding made by the Bankruptcy Court that the payment of the Law Firm Indebtedness to [CG] was a support obligation of [Debtor] to Miriam." Appellant's Br. at p. 10. Debtor repeatedly states that the Bankruptcy Court found the Law Firm Indebtedness non-dischargeable pursuant to § 523(a)(5), a section which allows "domestic support obligation" debts to be non-dischargeable. *Id*. at p. 10-14. Indeed, neither in the Bankruptcy Court nor in this Court has CG argued that the Law Firm Indebtedness should be non-dischargeable under § 523(a)(5). In fact, the Bankruptcy Court specifically noted that CG had not presented a § 523(a)(5) argument: "**Although not pled in this case**, attorneys' fees awarded in a matrimonial action may also be an aspect of a domestic support obligation and, therefore, nondischargeable pursuant to 11 USC § 523(a)(5)." *Prensky*, 416 B.R. at 409 n. 4 (emphasis added).

As repeatedly explained, the Bankruptcy Court did not base its holding on a finding that the Law Firm Indebtedness is a "domestic support obligation" under § 523(a)(5); rather, the debt was found non-dischargeable pursuant to § 523(a)(15) because it was a debt owed by Debtor to his ex-spouse that was incurred in a divorce decree. The Court finds support for the Bankruptcy Court's conclusion in *Gibson v. Gibson* (*In re Gibson*), 219 B.R. 195 (B.A.P. 6th Cir. 1998). In *Gibson*, an ex-husband debtor argued that his obligation to pay certain joint martial debts should have been dischargeable pursuant to § 523(a)(15) because the debts were made payable to a third party.[4] *Id*. at 201. The *Gibson* court reasoned that the dissolution decree created a new debt

---

[4] Although *Gibson* addressed the dischargeability of a divorce debt pursuant to § 523(a)(15) pre-BAPCPA, the court specifically considered whether the debt at issue was "incurred by the debtor

14

obligation, fully enforceable as a judgment of the domestic relations court, and the debt was therefore incurred at the time of the divorce decree. *Id*. at 205.  Here, Debtor's obligation to pay Ms. Prensky's attorney's fees to CG was ordered by the divorce court in connection with a divorce decree, and the obligation was awarded for the benefit of Ms. Prensky due to her status as Debtor's former spouse.  It is clearly a non-dischargeable, divorce-related debt pursuant to § 523(a)(15).

Nevertheless, even if the Bankruptcy Court had characterized the Law Firm Indebtedness as a § 523(a)(5) domestic support obligation, the same outcome would result.  Debtor's argument that the obligation to pay the Law Firm Indebtedness was not a support obligation owed to Ms. Prensky rests on the Law Firm Indebtedness being separately classified from the Divorce Decision's orders regarding child support, maintenance, and equitable distribution.  Appellant's Br. at p. 12.  Debtor contends that the "[i]f the [divorce] [c]ourt intended that [Debtor's] direct payment of the legal fees to [CG] was an obligation of support to [Ms. Prensky], the Court would have expressly so stated." *Id*.

Debtor does not cite any cases that would require such a literal reading of a divorce court's decision. In fact, the Bankruptcy Code defines "domestic support obligation" in § 101(14A), and within that definition is a requirement that the debt be "in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, **without regard to whether such debt is expressly so designated**."  11 U.S.C. § 101(14A)(B) (emphasis added).  Additionally, the principle that led the *Golio* court to find that the debtor could not discharge his obligation to reimburse his wife for her legal expenses is persuasive here; "dischargeability must be determined by the substance of the liability rather

---

in the course of a divorce or . . . divorce decree" under § 523(a)(15). *Gibson,* 219 B.R. at 201. Such language is duplicated in the current § 523(a)(15) statute.

15

than its form." *Golio*, 393 B.R. at 63 (*quoting Spong*, 661 F.2d at 9). This same principle was employed by the Court of Appeals for the Second Circuit in *Falk & Siemer, LLP v. Maddigan* (*In re Maddigan*), 312 F.3d 589, 594-95 (2d Cir. 2002), in which the court found that legal fees made directly payable to the attorneys who represented an out-of-wedlock mother in a child custody proceeding were "support" obligations owed from the father to the child pursuant to § 523(a)(5).[5] The court examined the substance of the family court's decision and found references to the child's welfare and the limited financial status of the mother. *Id*. at 595-96. Based on this language, the Court held that the father debtor's obligation to pay the mother's legal fees was a debt "in the nature of support" for his child. *Id*.

Here, an examination of the substance of the obligation reveals that the debt was made payable to Ms. Prensky in light of her being the "less monied spouse in [the] action" and in order to "level the playing field in the context of [the] unnecessarily prolonged litigation." Divorce Dec. at p. 18. In light of that finding, it would not have been clearly erroneous for the Bankruptcy Court to have also found that the Law Firm Indebtedness was a support obligation owed from Debtor to Ms. Prensky under § 523(a)(5). Accordingly, the decision of the Bankruptcy Court is **AFFIRMED** in its entirety.

An appropriate order shall follow.


DATED:      June 30, 2010                                          /s/ Freda L. Wolfson_____
                                                                   Freda L. Wolfson, U.S.D.J.

---

[5] The Court of Appeals could not have found the legal fees to be a support obligation owed to an "ex-spouse" because the parents never married. *Maddigan*, 312 F.3d at 593.